UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


Betty A. Ledford, et al,                :   Case No. 1:10-cv-706
                                        :
      Plaintiffs,                       :
                                        :
vs.                                     :
                                        :
Michael B. Colbert, Director,           :
Ohio Department of Jobs and             :
Family Services,                        :
                                        :
      Defendant.                        :

**ORDER**

    Pending before the Court are motions for summary judgment
filed by Plaintiffs and by the Defendant.  (Docs. 61 and 62)
Both motions seek entry of judgment with respect to Plaintiffs'
claims challenging the method by which the Ohio Department of
Jobs and Family Services treats certain VA benefits for purposes
of Medicaid income determinations.  For the following reasons,
the Court will grant Plaintiffs' motion, and deny Defendant's
motion.

**FACTUAL BACKGROUND**

    Plaintiffs Betty Ledford and Ida Gates, for themselves and a
class of similarly-situated individuals, filed a complaint for
declaratory and injunctive relief against Douglas Lumpkin, in his
official capacity as Director of the Ohio Department of Job and
Family Services.  (Mrs. Ledford passed away after the original

-1-

complaint was filed.) Their deceased husbands were both World War II veterans, entitling them to receive a Department of Veterans Affairs Aid and Attendance Allowance, based upon their spouses' military service and their own medical needs. Ledford and Gates each resided in an Ohio Medicaid-eligible assisted living facility, and received services under one of Ohio's approved Medicaid "waiver" programs. These programs generally permit payment for home and community based services in lieu of admission to a skilled nursing or intermediate care facility.

The Ohio Department of Jobs and Family Services ("ODJFS") administers the state's Medicaid program. After a recipient's eligibility for Medicaid is established, ODJFS calculates how much of a recipient's income must be contributed towards the cost of her care. This post-eligibility income determination must comply with federal requirements. Pursuant to the state's Medicaid regulations, ODJFS includes the first $90 of Plaintiffs' VA allowance as part of their non-exempt income in this post-eligibility review, and requires Plaintiffs to contribute that amount to the costs of their care. There is a suggestion in the record that the VA informed Ledford that the first $90 would be exempt from post-eligibility consideration, which prompted an inquiry to state officials. (See Doc. 15, Exhibit 3.)

Plaintiffs allege that this violates an applicable section of the Social Security Act governing Medicaid, 42 U.S.C.

-2-

§1396a(r).  They contend that this statute exempts the first $90 of their monthly VA benefit from post-eligibility review. Plaintiffs seek a preliminary and permanent injunction, prohibiting ODJFS from treating the first $90 per month of their VA payments in this manner.  They seek an order requiring ODJFS to reopen claims of affected class members who have been similarly treated, and they request an award of attorney's fees.

Plaintiffs were granted leave to file an amended complaint to add Olive Crumbly and Fern Darowski as additional class representatives following Mrs. Ledford's death.  (Doc. 44) Mrs. Darowski is a veteran who served in World War II; Mrs. Crumbly is a surviving spouse of a wartime veteran.  Both participate in Ohio's assisted living waiver program.  The motion to amend noted that waiver program participants are of advanced age and typically suffer from several medical conditions.  As a result, they may move in and out of waiver program services, depending on the level of care they might need.  The Court recently granted class certification to the Plaintiffs.  (Doc. 68)  Both parties now seek entry of judgment on Plaintiffs' claims.

## ANALYSIS

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An assertion of a undisputed fact must be supported by

-3-

citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (internal quotation omitted). The burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...". <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor.  <u>United States v. Diebold Inc.</u>, 369 U.S. 654, 655 (1962).

Here, the material facts are not in dispute.  Both parties contend that as a matter of law, they are entitled to entry of judgment.  The Court begins with a description of the benefits at issue.  The Veterans Administration provides pensions to certain financially eligible wartime veterans who are permanently and totally disabled for non-service reasons.  The pension rates are set forth in 38 U.S.C. §1521, and vary depending upon a veteran's marital status, and whether or not the veteran has dependent children.  Spouses of deceased veterans are also entitled to benefits, assuming financial eligibility.  Veterans and spouses

-4-

who are "in need of regular aid and attendance" receive a somewhat higher pension.  (38 C.F.R. 3.351(b) defines the need for aid and attendance as "helplessness or being so nearly helpless as to require the regular aid and attendance of another person.")  These aid and attendance benefits are a type of personal subsidy to an eligible veteran or spouse who needs personal care due to a qualifying disabling condition.  ODJFS does not "count" any of the Plaintiffs' VA benefits in its initial determination of whether an applicant's income qualifies them for Medicaid, as federal law forbids treating VA benefits as "income" for that purpose.  See 20 C.F.R. 416.1113.

38 U.S.C. §5503 addresses these VA benefits when a veteran or surviving spouse is hospitalized or admitted to an institution.  Subsection 5503(d)(2) states that if a veteran having "neither spouse nor child" is covered by a Medicaid plan for services he or she receives in a nursing facility, "no pension in excess of $90 per month shall be paid to or for the veteran for any month" following admission to that facility. ODJFS admits that this statute requires the state to disregard the first $90 of benefits paid to a veteran without spouse or child, or a veteran's surviving, childless spouse, in the post-eligibility review for nursing home residents.  (Doc. 63 at 1)

The question posed in this case is whether the first $90 in VA benefits can be considered in the post-eligibility process for

participants in Ohio's Medicaid waiver programs. These individuals qualify for skilled nursing level care, but are provided that care in assisted living or community-based alternatives to skilled nursing facilities. ODJFS contends that nothing in federal law prohibits treating these benefits as available for post-eligibility review purposes.

ODJFS cites Lamore v. Ives, 977 F.2d 713 (1st Cir. 1992), which affirmed the district court's judgment permitting the State of Maine to "count" VA aid and attendance benefits during post-eligibility determinations for Medicaid waiver program participants. There, the plaintiffs argued that a section of the Medicaid statutes, 42 U.S.C. §1396a(a)(17), required the state to treat their VA benefits in the same way for both initial eligibility and for post-eligibility determinations. Since VA benefits are not considered income for initial eligibility purposes, they argued that the same treatment should apply to post-eligibility determinations. The court rejected their argument because the statute upon which the plaintiffs relied, read in its entirety, applied only to "medically needy" Medicaid participants. The plaintiffs fell into a different category of

"optionally categorically needy." <u>Id</u>. at 718-719.[1]  Moreover, the court noted that the Secretary of HHS interpreted that section to permit the state to include the benefits in post-eligibility determinations.  The court held that "Congress explicitly delegated to the Secretary the broad authority to prescribe standards for assessing an applicant's eligibility for, and the extent of medical assistance under, a State Medicaid Plan.  In the face of such an explicit delegation of authority, the Secretary's interpretation of the parenthetical and the 'as would not be disregarded' language is 'entitled to more than mere deference or weight.'"  <u>Id</u>. (internal citations omitted).  The Secretary's interpretation was not arbitrary or capricious, and appeared to the court to be consistent with the Medicaid statutory scheme.

<u>Lamore</u> arose under 42 U.S.C. §1396a(a)(17), part of a lengthy section of the statute (§1396a(a)) describing the required contents of all state Medicaid plans.  Subsection 17

---

[1] The court explained that participating states are required to cover the "categorically needy," individuals who lacked income to meet basic needs.  States were not required to cover the "medically needy," those with incomes sufficient to meet basic needs but perhaps not to meet medical needs.  The "optionally categorically needy" are people who are eligible for but are not receiving SSI benefits, and people who would be eligible for SSI but for their institutionalized status.  <u>Lamore v. Ives</u>, 977 F.2d at 718-719, citing relevant statutes and regulations.

deals with certain income determinations.[2]  Here, a different
Medicaid statute is at the heart of the dispute.  42 U.S.C.
§1396a(r)(1) is entitled "Disregarding payments for certain
medical expenses by institutionalized individuals."  This
subsection states:

> (r)(1)(A) For purposes of [42 U.S.C. §§ 1396a(a)(17)
> and 1396r-5(d)(1)(D)] and for purposes of a waiver
> under [42 U.S.C. §1396n], with respect to the
> post-eligibility treatment of income of individuals who
> are institutionalized or receiving home or
> community-based services under such a waiver, **the
> treatment described in subparagraph (B) shall apply,**
> there shall be disregarded reparation payments made by
> the Federal Republic of Germany, and there shall be
> taken into account amounts for incurred expenses for
> medical or remedial care that are not subject to
> payment by a third party, including--
>
>> (i) medicare and other health insurance
>> premiums, deductibles, or coinsurance, and
>>
>> (ii) necessary medical or remedial care
>> recognized under State law but not covered
>> under the State plan under this title [42
>> U.S.C. §§1396 et seq.], subject to reasonable
>> limits the State may establish on the amount
>> of these expenses.
>
> **(B) (i) In the case of a veteran who does not have a
> spouse or a child, if the veteran--**
>
>> **(I) receives, after the veteran has been
>> determined to be eligible for medical**

---

[2] The district court pithily described the subsection as "a
virtually impenetrable thicket of legalese and gobbledygook."
Lamore v. Ives, 1991 U.S. Dist. LEXIS 16007, at *5 n.2 (July 19,
1991).  Indeed, the Supreme Court has described the Social
Security/Medicaid statutory web as "among the most intricate ever
drafted by Congress" and "Byzantine" in its construction.
Schweiker v. Gray Panthers, 453 U.S. 34, 43 (1981).

assistance under the State plan under this
title [42 U.S.C. §§1396 et seq.], a veteran's
pension in excess of $ 90 per month, and

(II) resides in a State veterans home with
respect to which the Secretary of Veterans
Affairs makes per diem payments for nursing
home care pursuant to section 1741(a) of
title 38, United States Code,

**any such pension payment, including any payment made
due to the need for aid and attendance, or for
unreimbursed medical expenses, that is in excess of $90
per month shall be counted as income only for the
purpose of applying such excess payment to the State
veterans home's cost of providing nursing home care to
the veteran.**

**(ii) The provisions of clause (i) shall apply with
respect to a surviving spouse of a veteran who does not
have a child in the same manner as they apply to a
veteran described in such clause.**

The material highlighted in bold was added to this section by the
Balanced Budget Act of 1997, and was not in the statute when
Lamore was decided.  Plaintiffs point out that the Lamore court
concluded that the Medicaid statutes as they existed at that time
placed no restrictions on the post-eligibility income
determination standards that applied to "optionally categorically
needy" participants.  Lamore, 977 F.2d at 720.  And the court
specifically noted the fact that in 1990, Congress recognized the
disparate post-eligibility treatment of VA aid and attendance
benefits, citing a House Conference Report on the Omnibus
Reconciliation Act of 1990.  Id. at n. 12.

Plaintiffs contend that the 1997 amendments to Section

-9-

1396a(r) were intended to change that treatment, and to exempt the first $90 of VA benefits for all Medicaid recipients, regardless of whether they are institutionalized in a nursing home or a VA state home, or are receiving waiver services in lieu of facility admission.  They contend that there is no substantial difference in health status between an individual who is admitted to a nursing home, and an individual who receives skilled nursing care in a home or community environment: both must require intermediate or skilled nursing level care to be eligible for these programs.  Plaintiffs argue that ODJFS' attempt to parse the subsections of Section 1396a(r)(1) without reading the statute as a whole, guided by reference to prior versions and to the related VA statutes, should be rejected.

Plaintiffs also cite CMS Publication 45-3, Section 3700, which describes the rules for post-eligibility review.  (See Doc. 15, Exhibit D)  CMS is the federal agency that oversees the Medicare and Medicaid programs, and its manuals and publications are considered to be authoritative.  The introduction to that section states that it contains rules for all Medicaid participants, those who are institutionalized and those who receive home and community-based waiver services.  Subsection 3705 deals with VA benefits; paragraph B references 38 U.S.C. §5503(d)(2) discussed above, which reduces VA benefits to $90 per month for an institutionalized Medicaid recipient

-10-

> ... having neither a spouse nor a child... .
> The limited VA pension, up to the amount of
> $90, is not counted as income in the
> eligibility or post-eligibility process
> (except as described below for certain 209(b)
> States). ... VA law precludes 209(b) states
> from counting the reduced VA pension as
> income in the post-eligibility process even
> if the State counts the reduced pension as
> income in the eligibility process, ... .
> Therefore, a 209(b) State that counts the
> veterans' pension as income in the
> eligibility process must protect the amount
> of the VA pension plus the amount of the
> maintenance allowance specified in the
> approved State plan for the veterans'
> maintenance allowance.

Plaintiffs argue that the statute and the CMS publication make it clear that all Medicaid participants who receive the reduced VA aid and attendance benefit should be treated in the same fashion in the post-eligibility process.

ODJFS argues that Plaintiffs' interpretation of the statute is incorrect. Section 1396a(r)(1)(B) simply states that a veteran in a state veterans home must contribute anything over $90 per month he or she receives to the cost of his or her care. As none of the Plaintiffs reside in an Ohio state veterans home, ODJFS contends that this section does not apply to them. And with respect to Section 1396a(r)(1)(A), it argues that the statute simply requires the same "treatment" for waiver participants - that is, they must also contribute any benefit in excess of $90 towards their care. But since Section 1396a(r)(1)(A) and (B) are silent with respect to the **first** $90,

ODJFS argues that Ohio has discretion to require waiver
participants to contribute that amount, as well as anything in
excess of $90.  Plaintiffs Darowski and Crumbly are
"categorically Medicaid-eligible" based on their age, but they
are not "medically needy" (as described in <u>Lamore</u>), and ODJFS
asserts that Ohio does not extend coverage to such individuals.
ODJFS argues that the 1997 amendments to Section 1396a(r) do not
compel a different result than that reached in <u>Lamore</u>.

Furthermore, ODJFS notes that Ohio's State Medicaid Plan was
approved by HHS in 1998.  Part of that plan, Attachment 2.6-A,
addresses "post-eligibility treatment of Institutionalized
Individuals' Income."  It states that the following items are not
considered in the post-eligibility process: "H. VA pensions
limited to $90 per month under 38 U.S.C. §5503." (Doc. 61,
Exhibit A-1)  Because Plaintiffs are not "institutionalized
individuals" but are receiving waiver program services, ODJFS
contends that the approved plan permits the state to consider
their VA benefits for post-eligibility purposes.  It also cites
the same CMS publication cited by Plaintiffs, Publication 45-3,
Section 3705, paragraph C, which states:

> Pension payments made by the VA, to veterans
> residing in State veterans homes that also
> participate in Medicaid in excess of $90 per
> month (including payments made for aid and
> attendance and unreimbursed medical expenses)
> must be counted as income in the post-
> eligibility process.  The provision applies
> only to a veteran without spouse or child and

> to a surviving childless spouse of a veteran.
>
> Payments made by the VA up to $90 per month are not counted as income in the post-eligibility computation for these veterans. Payments made by the VA in excess of $90 per month, as well as countable income from other sources is used in determining the veteran's liability toward the his/her cost of care. [sic] ...

Because all of these rules apply to **institutionalized** Medicaid participants, ODJFS argues that federal law does not prohibit Ohio from counting the first $90 of VA benefits for waiver program participants.

This Court previously observed that Section 1396a(r)(1)(B), standing alone, clearly applies to veterans residing in a state veterans home. But as in the previous pleadings filed by ODJFS, its arguments do not directly address the phrase that was added to subsection (A), requiring "the treatment" described in subsection (B) to be applied to individuals in waiver programs. ODJFS suggests that "the treatment" is only the requirement that benefits in excess of $90 per month be contributed by an institutionalized veteran. But that "treatment" could not apply to someone receiving waiver program services, who by definition is not institutionalized. The Court also notes that the title of the section of the statute is "disregarding" certain payments; the Court presumes that Congress used that phrase for a reason, to instruct the states to "disregard" some payment. The only possible payment that must be "disregarded" is the first $90, as

anything in excess of that is specifically "regarded" as committed to the costs of the individual's care.  Subsection (A)'s reference to "the treatment" must be to subsection (B)'s description of the treatment of payments, not the status of the veterans described there.  Otherwise, the cross-reference to subsection (B) serves no real purpose that the Court can discern.

The Court also notes that in Mrs. Ledford's administrative appeal, the ODJFS hearing officer concluded that Section 1396a(r)(1)(B) clearly **protects** the first $90 in veterans benefits for those residing in veterans homes, even though (as ODJFS has repeatedly argued) the statute is silent with respect to that first $90.  But the officer then concluded that Section 1396a(r)(1)(A) only deals with German reparation payments; the officer found that if "Congress intended to exempt the veterans benefits when an individual receives home and community based services, they certainly would have done so."  (See Doc. 13, Exhibit B at 3) But the hearing officer did not address the meaning of the phrase "the treatment described in subparagraph (B) shall apply."  The Court agrees with the hearing officer's conclusion that subsection (B) clearly protects the first $90 of benefits, e.g. that amount must be "disregarded."  The Court therefore finds that the same "treatment" should apply to the individuals described in subsection A, which includes waiver program participants and the Plaintiffs.  As the Court previously

noted, the statute is not a model of clarity.  (See Doc. 26 at
11)  But the phrase added by Congress to subsection (A) must be
given reasonable effect.

2.  <u>Marital Status and Children</u>.

ODJFS next contends that whether or not the Court accepts
its argument with respect to the first $90 of VA benefits,
Section 1396a(r)(1)(B) clearly states that it applies only to a
veteran "who does not have a spouse or a child," or to surviving
spouses who do not have a child.  Since all of the named
Plaintiffs have children, ODJFS argues they are excluded from any
coverage under this statute.  Plaintiffs disagree, arguing that
the phrase "without spouse or a child" is taken directly from the
relevant VA statutes and refers to dependents.  Plaintiffs note
that the VA award letters to both Mrs. Ledford and Mrs. Crumbly
state that their benefits are calculated based on their status as
"a surviving spouse with no dependents."  (See Doc. 67, Exhibit
E, Crumbly award letter; Doc. 62, Exhibit G at 7, Ledford award
letter.[3])  They receive these benefits even though they have
adult (non-dependent) children.

As noted above, 38 U.S.C. §5503 reduces the benefits paid
for institutionalized veterans "having neither spouse nor child."

---

[3] The letter states that her pension is limited to $90
because she is on Medicaid, in a nursing home, and has no
dependents.  It further states that the $90 "is for personal use
and should not be used by Medicaid for medical expenses."

The benefits are paid pursuant to 38 U.S.C. §1521, which sets the payment levels (offset by a veteran's annual income) depending upon whether a veteran is supporting a spouse and/or a dependent child.  Veterans "having neither [a dependent] spouse nor [a dependent] child" receive the lowest level of benefits.  It is only reasonable to conclude that the phrase "having neither spouse nor child" used in 38 U.S.C. §5503 has this meaning.  Moreover, 38 U.S.C. §101(4) defines "child" for purposes of the VA statutes as a legitimate child of the veteran's household under the age of eighteen (or dependent upon the veteran for reasons set forth in the statute).

Congress also used the phrase "a veteran who does not have a spouse or a child" in 42 U.S.C. §1396a(r)(1)(B), describing the Medicaid-eligible veterans in state veterans homes.  Plaintiffs persuasively argue that this phrase must be read in conjunction with the same language used to define the **type** of VA benefit being received: the benefit received by a veteran who does not have a **dependent** child (or a spouse).  The statute cannot reasonably be read to cover a veteran who has no children at all, as such an interpretation would substantially limit the class of veterans who would fall within its reach.

3.  Plaintiff Gates

ODJFS argues that Mrs. Gates lacks standing, or that she lost whatever standing she may have had, because after the

-16-

complaint was filed she disenrolled from the waiver program.  The record reflects that Mrs. Gates moved in with her daughter for a time because assisted living was no longer meeting her needs. Shortly thereafter, her daughter contacted The Ohio Department of Aging because Mrs. Gates needed admission to a nursing facility. (See Doc. 36, Exhibit 1, Patterson affidavit.)

The Court addressed a similar argument in overruling ODJFS' objections to Plaintiffs' motion to amend their complaint to add additional class representatives.  The Court found that, given the nature of the proposed class (which has now been certified by the Court), it is highly likely that the health status of class members would change prior to any final resolution of the case. Individuals may pass into and out of Medicaid waiver programs, and into higher or lower levels of care.  This situation occurred for Mrs. Gates (and also Mrs. Ledford, who passed away) does not moot the class claims for declaratory and injunctive relief.  As the Court noted, "The age and health conditions of the named plaintiffs and other putative class members are such that their 'claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.' U.S. Parole Commission v. Geraghty, 445 U.S. 388, 399 (1980)."  The same conclusion applies at this juncture of the case.  While Mrs. Gates is apparently not currently

-17-

receiving waiver program services, she may well do so in the future, and ODJFS will apply the same policy it applied to her in the past.  When the original complaint was filed, Mrs. Gates clearly had standing to pursue her claim, and the Court will not dismiss her at this point.

4.  <u>Plaintiff Ledford's Claims</u>.

Mrs. Ledford passed away on July 3, 2011, and a suggestion of death was filed in the record on August 18, 2011.  ODJFS argues that her claim does not survive her death.   That question depends upon Ohio law, to the extent that it is not inconsistent with the Constitution and federal law.  See, e.g., <u>Jaco v. Bloechle</u>, 739 F.2d 239, 241 (6th Cir. 1984).

Ohio Rev. Code 2305.21 states:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto.

ODJFS contends that Ledford's claims are not based on common law, do not seek mesne profits, do not allege personal injury or property damages, or claim deceit or fraud.  Her claims therefore do not survive her death pursuant to the statute.

Plaintiffs previously recognized that if a party's claim is not extinguished by death, a motion for substitution by the deceased's successor or representative must be made within 90

days after the suggestion of death is filed, pursuant to Fed. R. Civ. Proc. 25(a)(1).  (See Doc. 40 at 2)  No substitution motion was made by Ledford's representative within that time. Plaintiffs contend that Mrs. Ledford's claim is one for "provable monetary damages," the $90 per month that ODJFS wrongfully required her to pay towards her care from the date the lawsuit was filed until her death in July 2011.  (Doc. 64 at 17)  Even assuming that her claim survived, Plaintiffs have not substituted a proper party to prosecute such a claim on behalf of Mrs. Ledford's estate or her survivors.

The Court notes that the complaint was originally filed in Mrs. Ledford's name "by and through her daughter and Next Friend, Karen Epperson" as permitted by Fed. R. Civ. Proc. 17(c)(2).  But following Mrs. Ledford's death, her daughter may not proceed unless she is the legal representative of her mother's estate, or has been appointed as such by a court.  There is some authority in the Sixth Circuit that the lack of a formal appointment as administrator or executor is not required, so long as the complaint contains facts establishing that legal status.  See, Garrett v. Belmont County Sheriff's Dept., 374 Fed. Appx. 612, 2010 U.S. App. LEXIS 6770 (6th Cir., April 1, 2010)(unpublished), citing Jaco v. Bloechle and noting that only "the victim or her estate's representative" may prosecute a Section 1983 claim.  The plaintiff in that case, proceeding pro se, alleged that he was

-19-

the legal representative of his wife's estate because he was her surviving spouse and all of his children were also his deceased wife's children.  Under Ohio intestacy law, he would be the sole person entitled to inherit his wife's estate, and his pleading was sufficient for that purpose.

The record in this case suggests that Mrs. Ledford had at least two children, a daughter and a son who is mentioned in the Medicaid records submitted by Plaintiffs.  (See Doc. 62, Exhibit G at pp. 3-4)  The intestacy statute, Ohio Rev. Code 2105.06(A), states that if there is no surviving spouse, the estate passes "to the children of the intestate or their lineal descendants, per stirpes."  Ms. Epperson is apparently not the sole heir of her mother under this statute, based on the record before the Court, and she has not sought to substitute herself as the estate's legal representative.  The Court must therefore conclude that even if any of Mrs. Ledford's claims survived her death, they must be dismissed without prejudice.

5.  <u>Private Right of Action under Section 1983.</u>

Finally, ODJFS renews an argument it made earlier in this case, that 42 U.S.C. §1396a(r)(1) does not create a private right that Plaintiffs may enforce through an action under 42 U.S.C. §1983.  The Court rejected this argument in denying ODJFS' motion to dismiss the Plaintiffs' substantive claim under the statute. (Doc. 26, June 7, 2011 Order)  As the Court previously discussed,

-20-

the Supreme Court has identified three factors that guide this analysis: did Congress intend to benefit the Plaintiffs; is the right sufficiently concrete that a court may enforce it; and is the provision binding on the states.  See <u>Blessing v. Freestone</u>, 520 U.S. 329, 340-341 (1997).  The Court concluded that 42 U.S.C. §1396a(r)(1) satisfied these requirements:

> Subsection (1)(B) is clearly intended to benefit wartime veterans and their surviving spouses who receive a veteran's pension. While the statute is not a model of clarity, it is reasonably clear that Subsection (1)(B) is intended to protect a portion of an eligible veteran's pension. That right is not so "vague and amorphous" that its enforcement strains judicial competence. And the statute is couched in mandatory language (e.g., the treatment "shall" apply, and the pension payment in excess of $90 per month "shall be counted").

Doc. 26 at 11-12.

ODJFS argues in its pending motion that if there is any ambiguity in the statute, this Court should defer to the interpretation contained in CMS Publication 45-3, discussed above.  But the Court cannot agree that Publication 45-3 clearly sets forth the Secretary's interpretation of Section 1396a(r) in the manner that ODJFS contends, or that it clearly permits Ohio to treat Plaintiffs' VA benefits in the manner being challenged in this case.  ODJFS also submitted a copy of an 2006 email from a CMS employee, Ms. Wilder, to ODJFS discussing the VA regulations regarding reduced pensions, and citing 38 C.F.R.

3.551.  This email summarizes the VA statutes that reduce pension payments when a veteran is receiving Medicaid nursing home care, and states that the veteran is not liable for excess payments if the VA fails to reduce his pension in a timely fashion.  At the end of the email, Ms. Wilder states that "the regulation also specifies that the $90 reduced pension only applies to individuals in title XIX nursing homes.  Therefore, the reduced pension does not apply to individual[s] receiving HCBS waiver services who are subject to post eligibility rules."  (Doc. 61, Exhibit 1)  This email, even if it is an authoritative statement from CMS, describes the VA regulations.  It does not address Section 1396a(r)(1).  Even if Ohio is entitled to consider Plaintiffs' VA pensions for post-eligibility purposes, that statute does not permit the state to do so with respect to the first $90 in benefits.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion for summary judgment (Doc. 62) is granted.  The Court finds that the policy implemented by ODJFS in counting the first $90 of Plaintiffs' VA aid and attendance benefits in the post-eligibility determination violates 42 U.S.C. §1396a(r).  ODJFS is hereby enjoined from treating such benefits in this fashion for all class members, and for all HCBS Medicaid waiver program participants who receive VA aid and attendance benefits,

effective October 12, 2010.  Defendant's motion for summary judgment (Doc. 61) is denied, except with respect to the claims of Betty Ledford, which are dismissed without prejudice.

     SO ORDERED.

DATED: June 18, 2012     <u>s/Sandra S. Beckwith</u>
                                    Sandra S. Beckwith
                                    Senior United States District Judge