UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Betty Ledford, by and through her Daughter and Next Friend Karen Epperson, et al,, | : | Case No. 1:10-cv-706 |
| Plaintiffs, | : | |
| vs. | : | |
| Michael B. Colbert, Director of the Ohio Department of Job and Family Services, | : | |
| Defendant. | : | |

**ORDER**

Plaintiffs have filed a motion asking this Court to reopen this case (Doc. 84), so that the Court may consider Plaintiffs' motion for an award of post-judgment attorney's fees. (Doc. 85) Defendant opposes both of Plaintiffs' motions, and Plaintiffs have filed their reply memoranda.

Plaintiffs filed this lawsuit in October 2010, challenging the method by which the Ohio Department of Jobs and Family Services treated certain VA benefits for purposes of Medicaid income determinations. After the parties briefed several motions, this Court granted certification of a class of Plaintiffs (Doc. 68), and granted Plaintiffs' motion for summary judgment. (Doc. 71) In the latter order, this Court held:

> The Court finds that the policy implemented by ODJFS in counting the first $90 of Plaintiffs' VA aid and attendance benefits in the post-eligibility determination violates 42 U.S.C. §1396a(r). ODJFS is hereby enjoined from treating such benefits in this fashion for all class members, and for all HCBS Medicaid waiver program participants who receive VA aid and attendance benefits, effective October 12, 2010.

Doc. 71 at 22. Defendant did not appeal the judgment, and Plaintiffs subsequently sought an award of attorney's fees as prevailing parties. (Doc. 73) That motion was

fully briefed by September 13, 2012 but before the Court could rule, the parties submitted an order setting forth an agreed resolution of the fee motion:

> Plaintiffs are prevailing parties in this action. Counsel for Plaintiffs are therefore entitled to an award of reasonable fees and costs pursuant to 42 U.S.C. § 1988(b). The parties have agreed to a lump sum amount for fees and costs of $125,000.00. This amount is reasonable. Said amount includes attorney fees and costs incurred by counsel for Plaintiffs through the Judgment entered in this case on June 18, 2012 and incurred in the preparation of the Plaintiffs' motion for fees and their reply

.
(Doc. 80) This Court approved the agreement and ordered Defendant to pay to Pro Seniors, Inc. (Plaintiffs' attorneys) the agreed sum of $125,000.00 within 45 days.

Over three years later, Plaintiffs filed the pending motion to reopen the case. The motion cites no legal authority and simply states that "extensive post judgment activity has occurred to monitor and enforce the court's order." (Doc. 84 at 1) Defendant opposes the motion to reopen, arguing that this Court did not retain jurisdiction over the case, did not order any supervision or monitoring of the injunction, and did not request any post-judgment reports concerning implementation of the injunction. Defendant notes that Plaintiffs are seeking an additional fee award of $219,473, which is almost twice the amount Plaintiffs recovered for prosecuting the lawsuit to a successful conclusion. Defendant asserts that it has complied with the Court's judgment, and there is no legal basis upon which this Court could assert jurisdiction to reopen the case and consider a second fee motion.

In their reply (Doc. 91), Plaintiffs argue that the court has continuing jurisdiction to enforce the permanent injunction it issued. As prevailing parties, they argue they are entitled to fees for post-judgment enforcement and monitoring activities. They cite United States v. Tennessee, 780 F.3d 332, 336 (6th Cir. 2015) which noted that

determining "prevailing party status" is more complicated when the award is for work done after the court grants relief. And in their fee motion, Plaintiffs analyze the post-judgment time spent by their attorneys, which they argue was necessary and reasonable and which Court has jurisdiction to consider.

The Court agrees with Defendant's observation that the case law on the question of jurisdiction to reopen this case is not entirely clear. A district court's jurisdiction clearly extends to collateral matters including attorney's fee motions filed after entry of judgment. Fed. R. Civ. Proc. 54(d) reflects this principle, and requires fee motions to be filed within 14 days of entry of judgment. In cases involving consent decrees or permanent injunctions that include explicit provisions for ongoing judicial enforcement, there is little doubt that the Court may entertain post-decree fee motions in conjunction with enforcement disputes. For instance, in Binta B. v. Gordon, 710 F.3d 608 (6th Cir. 2013), the Sixth Circuit considered a post-consent decree fee motion filed by plaintiffs in long-running litigation about the State of Tennessee's health care program for Medicaid recipients. The original lawsuit had been filed in 1979, and over the years the court entered a series of consent decrees and revisions to those decrees. A 2003 consent decree included provisions for plaintiffs to monitor the state's compliance and implementation of its terms, and awarded plaintiffs' fees. The state subsequently sought to modify that decree, which led to a series of court hearings and an order granting some but denying other requested modifications. The court also awarded plaintiffs additional fees for that round of litigation, finding that plaintiffs were prevailing parties but reducing the fee award based on the degree of success achieved. Id. at 613-616.

On appeal, the Sixth Circuit observed that no one disputed the fact that plaintiffs prevailed in obtaining the 2003 consent decree. However, "the real question here is what impact the 2003 decree has on plaintiffs' prevailing party status going forward, especially where plaintiffs' efforts are concentrated on defending that decree from substantial modification by defendants. Are plaintiffs required to reestablish their prevailing party status and a material alteration of the parties' legal relationship with each new iteration of the consent decree? Or alternatively, can plaintiffs rely on their earlier prevailing party status, and only be required to show that the work they performed was otherwise compensable because it was in some way spent defending the earlier award?" Id. at 620-621. After careful review of Supreme Court and Sixth Circuit precedent, the court held that plaintiffs

> ... may rely on a prior consent decree that materially altered the parties legal relationship as the basis for establishing prevailing party status under Section 1988. ... But in order to recover fees for work performed enforcing or defending that prior decree, plaintiffs have to show that the work was necessary to enforce the prior decree or judgment and resulted in a court order or agency determination that at the very least secured [plaintiffs'] initial success in obtaining the consent decree.

Id. at 626 (internal citations and quotations omitted). Binta B. involved a consent decree entered by the court, which included provisions for plaintiffs' counsel to monitor the state's performance of the decree. Here, the final judgment provides for no monitoring of the state's compliance by any entity. And the parties' previous stipulation regarding attorney's fees for the litigation up to the time of judgment is silent about any involvement of Plaintiffs' counsel in post-judgment activities, or their intent to seek an additional amount of fees at some future date.

In United States v. Tennessee, 780 F.3d 332 (6th Cir. 2015), the Sixth Circuit

applied <u>Binta</u> to a fee motion filed in another long-standing civil rights case against the State of Tennessee, this one involving the rights of institutionalized individuals with mental disabilities.  Over the years, Plaintiffs' counsel had been awarded some $3.6 million in fees to litigate the original claims and to monitor and enforce a series of subsequent consent decrees.  At issue in this appeal was counsel's most recent application for post-decree "general monitoring work."  With regard to plaintiffs' prevailing party status, the court surveyed case law from other circuits with respect to whether post-judgment monitoring work is compensable without a post-judgment court order.  The court noted that it "has yet to stake out a clear position on this issue," but in <u>Binta B.</u>, the court had at least required the plaintiff to satisfy a three-part test: "... to show that the work was necessary to enforce the prior decree, that the work resulted in an order, and that the order secured the plaintiff's initial success...".  Ultimately, the court did not decide whether <u>Binta B.</u>'s three-part test was dicta, or what sort of "order" might be necessary, because the court concluded that the monitoring work was not necessary to enforce the consent decree.  The court had previously appointed an independent monitor, to whom the state had already paid $10.6 million, and Plaintiffs had not shown why their own "monitoring" work was necessary.

  Both of these cases involved consent decrees, over which the district courts exercised continuing enforcement jurisdiction.  And in both, the defendants actively sought modification of terms previously approved by the court.  In this case, neither party requested this Court to exercise oversight of Defendant's compliance with the injunction, or to appoint a monitor to do so.  Plaintiffs did not seek the Court's assistance or file any motions to enforce the injunction.  Plaintiffs concede that in

October 2015, the final Plaintiff's claim was approved by the State, and new rules regarding the proper treatment of the VA benefits have apparently been promulgated. Defendant argues that allowing Plaintiffs to seek additional fees at this point would reward their failure to announce that intent three years ago.  If they had done so, the Court could have taken steps to limit any post-judgment work by Plaintiffs' counsel for which they intended to seek reimbursement from the state.  Defendant also argues that it began efforts to implement the judgment almost immediately: it issued a policy directive, informed county Medicaid workers about the change, and notified class members in a March 25, 2013 letter.  (See Doc. 85-1 at PAGEID 1066)

Plaintiffs respond that their attorneys' post-judgment efforts to secure and monitor implementation of the injunction was necessary due to Defendant's "dilatory and perplexing actions" regarding compliance.  (Doc. 92 at 3)  Plaintiffs' counsel have submitted numerous email exchanges with counsel for the state regarding implementation of the new policy for Aid and Attendance benefits.  Those exchanges reveal that after further discussions with Plaintiffs' counsel, relief was appropriately expanded to include VA pension benefits.  While initial Medicaid rule amendments were apparently drafted sometime in the spring of 2014, the amendments were not finalized by the end of 2015.  The letter that the state sent to class members on March 25, 2013 directed class members to contact the state at toll-free telephone numbers for assistance in processing their claims.  Yet the emails attached to the fee motion reflect that those numbers were frequently busy, and that misinformation was often given to those who called.  Many months later, it was discovered that some county Medicaid workers were misinforming class members about their benefits and refusing to

implement the new policy ordered by this Court. Class counsel assisted in resolving these problems as well.

After reviewing pertinent case law and the parties' arguments, the Court concludes that it will reopen this case and consider Plaintiffs' fee motion. It would have been preferable for Plaintiffs to notify this Court when and if problems arose with implementation of the final judgment, or to specifically request the Court to appoint counsel in some type of monitoring role. The complicated structure of the Medicaid program, the involvement of each county in recalculating and awarding a correct allowance, and the necessity for amendments to the state's Medicaid rules, likely contributed to some of the problems encountered, and to which counsels' efforts were directed. The Court also notes that the class members are elderly, and many of them must rely on family members to assist with their financial affairs. Counsels' name and telephone numbers were included in the state's letter as a source of information about the litigation. It is quite understandable that when class members encountered difficulties with state or county workers, counsel was contacted for help. Even though Plaintiffs did not seek this Court's assistance in resolving the problems and bureaucratic delays, the Court concludes that it does have jurisdiction to consider the fee petition.

Assuming that the analysis of <u>Binta B</u>. would apply here, the Court must determine if counsels' work was necessary to enforce the final judgment, and that it resulted in some sort of "order" that secured Plaintiffs' initial success. Counsels' fee petition includes a detailed statement of hours logged by lead attorneys Hambley and Sheline, three additional attorneys (Barnes, Helmle and Zak), and several law clerks and law graduates. The time reported is segregated under subheadings of "General

Class Management" (320.1 hours), and time allocated to individual class members: the two named plaintiffs, 20.6 and 28.9 hours respectively, and class members 1-31, with varying amounts of time allotted to each one.

In reviewing whether the time spent was "necessary," the Court initially will disallow all of the hours reported by law clerks and law graduates.  Most of these entries describe clerical tasks, answering telephone calls, updating "master lists," organizing documents, and similar efforts.  While these tasks may have been helpful to lead counsel, the Court concludes that they were not "necessary" to enforce the final judgment in this case.

Attorneys Hambley and Sheline were primarily responsible for litigating this case to judgment, and were the primary contacts with the state regarding the post-judgment rule changes, notices to the class, and responding to implementation problems at the county level.  They also engaged in many direct communications with class members in attempting to resolve individual implementation problems.  The Court finds that the majority of their time as reflected in the fee petition (Doc. 85-4) was both necessary and reasonable.  The Court will reduce their time to account for inter-office conferences between them and with other attorneys and staff working on the case.  The Court realizes that conferences among attorneys working on a case are inevitable and often beneficial to the client.  However, a reduction of 15% to the hours of both Hambley and Sheline is appropriate here to avoid duplication of effort.  The Court also finds that a reduction of 10% for both attorneys' total time is appropriate to account for billing entries that describe efforts with individual class members' problems with securing VA documentation, issues regarding probate matters, and time reflecting administrative or

organizational work. While no doubt helpful, the Court finds that this reduction is appropriate to account for these tasks that were not directly related to enforcement efforts. The balance of time logged by attorneys Sheline and Hambley is both necessary to enforcement and implementation of the judgment, and is reasonable. Each of their total hours are reduced by 25%, to a total of 134.7 for Hambley, and 94 for Sheline.

     Attorneys Barnes, Helmle and Zak also recorded time working on the post-judgment efforts on behalf of the class. Barnes' time was logged for individual class members Crumbly, and Class Members 3, 6, 8, 9, 10, 14, 19, 25, 26, 28, 29 and 31. The entries describe time spent largely communicating with county-level officials and with JFS to verify and calculate the proper awards for each of these class members. In at least two cases, administrative hearings were required which attorney Barnes attended in order to secure relief for that class member. In several others, the entries reflect repeated communications with the officials, who several times requested additional information, or reported that the class members' information was misplaced or not "in the system," or asked for more time to respond to the requests for claim payment. The Court concludes that attorney Barnes' time was necessary and is reasonable, with a 20% reduction for inter-office conferences and to reflect some administrative or repetitive tasks. Barnes' total hours of 110 are reduced by 20%, to 88 hours.

     Attorney Helmle billed a total of 29 hours, which all appear to the Court to be supplemental to hours billed by other attorneys, or comprise tasks such as drafting documents, updating spreadsheets, making or receiving telephone calls and reporting

the results to other attorneys. A representative sample of Helmle's time is for Class Member #17, where Helmle billed 1.9 hours for phone calls, drafting letters, and discussing the client's situation with Attorney Sheline. The requested hours for attorney Helmle are denied as duplicative of time spent by others, and not necessary to enforcement of the judgment.

Attorney Zak apparently began working on the case when he was a law graduate, and began billing as an attorney in late 2013. While the Court has disallowed the time requested for law graduates, the fact that he had some knowledge and familiarity with the case, the issues and the clients may have been very helpful to the efficient management of counsels' overall tasks. Attorney Zak billed a total of 98.75 hours. The Court will disallow his time reported under "General Class Management" because it reflects tasks that are either administrative or are supplemental to the efforts of attorneys Sheline and Hambley. For example, Zak's time in this category includes creating and updating spreadsheets of class members; drafting templates for correspondence; updating status checklists; meeting with other attorneys; and reviewing documents. The Court will disallow 32.2 hours of Zak's time in the "General" category. The Court will also disallow 0.3 hours billed under the Crumbly category, and 0.2 hours for Class Member 3 as duplicative. The Court has reviewed the balance of entries logged under the subheadings for class members Gates and Darowski, and for members 1, 2, 4, 5, 6, 8, 9 ,10,11, 14, 15, 16, 17, 19, 21, 23, 24, 25, 26, 27, 28, 29, 30 and 31, and finds the time logged in these categories was reasonable and necessary. Attorney Barnes also billed time for many of the same class members, but the Court is satisfied that the time entries do not overlap and do not reflect duplicative effort by these

two attorneys. Attorney Zak's total time of 98.75 hours is reduced by 32.7 hours, to a total of 66.05 hours.

Hourly Rates: Plaintiffs seek an hourly rate of $450 for attorneys Sheline and Hambley, and $260 for attorneys Barnes and Zak. In addition to their own affidavits attesting to their qualifications and experience, Plaintiffs submit a declaration from Janet Pecquet, an attorney with Beckman Weil Shepardson LLC who is very experienced in representing plaintiffs in civil rights litigation, and especially in issues regarding the elderly and in long term care insurance. She states that her standard billing rate is $450 per hour, and that the requested rates are in accord with the 1983 Rubin Committee Rates, adjusted for inflation. (Doc. 85-7 at 2) The Rubin Committee rates have often been used as a benchmark in this district, and were recently applied in awarding fees in a civil rights case. See Hunter v. Hamilton Cty. Board of Elections, Case No. 10-cv-820-SJD, Dkt. 227, Sept. 30, 2013 Order granting fees. In that case, the Court approved a $400 hourly rate for a senior, experienced civil rights attorney, and noted awards to other local senior attorneys in recent qui tam cases in this district of $500 per hour.

This Court has not mechanically applied the Rubin rates in prior cases, or treated them as either a floor or a ceiling on reasonable hourly rates. This Court approved a very experienced local ERISA attorney's requested $350 rate in 2007, even though the Rubin Guidelines rate would have been lower. See Neiheisel v. AK Steel, Case No. 1:06-cv-030, Order of January 17, 2008. The Sixth Circuit recently affirmed hourly rates awarded in a case from the Northern District of Ohio that ranged from $250 to $450 per hour; Van Horn v. Nationwide Prop. and Cas. Ins. Co., 436 Fed. Appx. 496, 499 (6th

Cir. 2011). And this Court recently awarded hourly rates of $425 to out-of-state counsel who successfully represented a class of retirees in ERISA litigation. Schumacher v. AK Steel, 995 F.Supp.2d 835, 847 (S.D. Ohio 2014). The Court noted there that the requested rates were high for this district, but found that the rate reflected their skill and success, as well as accounting for market rates in their national ERISA practice and in their home market of Chicago.

Defendant notes that a "reasonable rate" is one sufficient to attract competent counsel, but avoid a windfall. Ohio Right to Life Society, Inc. v. Elections Commission, 590 Fed. Appx. 597, 2014 U.S. App. LEXIS 21472 (6th Cir. 2014), approving an hourly rate of $250, well below the $445 to $465 requested by counsel. Defendant cites a recent award of $300 per hour for lead counsel, and $205 for associates, in a Section 1983 case involving Medicaid recipients. Hughes v. McCarthy, Case No. 5:10-cv-1781 (N.D. Ohio, Sept. 30, 2015) (see Doc. 89-3 at 12-13). This Court also notes that in their initial fee petition filed on July 27, 2012 (Doc. 73), Plaintiffs' counsel Sheline and Hambley requested an hourly rate of $300. They have not explained the basis for their new rate of $450, which is a rather large increase given that inflation over the past three years has been minimal. Even using the Rubin Committee's 4% yearly adjustment factor to that rate would result in a rate of approximately $338.

Balancing all of these issues, the Court concludes that an appropriate hourly rate for attorneys Sheline and Hambley is $325 per hour, an increase of about 2% per year from their 2012 stated rate.

Plaintiffs' first fee petition did not include any time for younger attorneys or associates. Attorney Zak was admitted in November 2013, and it is not clear when

Attorney Barnes was admitted. Ms. Pecquet's declaration states that $260 per hour is normally charged by her firm for attorneys admitted in 2013, and she notes that rate was cited in Hunter. The Court finds that the requested rate is higher than it would typically allow for very junior attorneys working under the direction of lead counsel. The Court finds that an hourly rate of $210 is appropriate for Attorneys Zak and Barnes.

In sum, the Court awards the following to Plaintiffs:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Attorney Hambley | 134.7 hours x $325 = | | $43,777.50 |
| Attorney Sheline | 94 hours x $325 = | | $30,550.00 |
| Attorney Barnes | 88 hours x $210 = | | $18,480.00 |
| Attorney Zak | 66.05 hours x $210 = | | $13,870.50 |
| TOTAL FEES: | | | $106,678.00 |

In addition to determining whether the time spent by Plaintiffs' attorneys was necessary, the second factor cited by the Sixth Circuit in its Binta B. discussion was whether post-judgment efforts resulted in "some sort of order" securing Plaintiffs' success. After Binta B., however, the Sixth Circuit conceded (in United States v. Tennessee, supra) that it has not required any type of formal order or decree in order to justify an award of post-judgment fees. After reviewing all of the materials submitted by Plaintiffs, this Court concludes that the subsequent administrative awards to the class members and the final promulgation of the amended rules, are sufficient to satisfy this factor. Under the somewhat unique circumstances presented here, the Court is satisfied that the efforts undertaken by counsel were necessary to secure the final implementation of the judgment, and that they resulted in successful awards to all eligible class members.

## CONCLUSION

For all of the reasons discussed, the Court grants Plaintiffs' motion to reopen this case. (Doc. 84) Plaintiffs' motion for an award of post-judgment attorney's fees (Doc. 85) is granted in part and denied in part. Plaintiffs are awarded a total of $106,678 in attorney's fees to be paid by the Defendant.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: March 8, 2016                                s/Sandra S. Beckwith
                                                    Sandra S. Beckwith, Senior Judge
                                                    United States District Court